IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
HABEEBA'S DANCE OF           :
THE ARTS, LTD.,              :
                             :
        Plaintiff,           :
                             :
    vs.                      :   Case No. 2:05-cv-926
                             :   JUDGE GRAHAM
SUSAN KNOBLAUCH and          :
YWCA Columbus,               :
                             :
        Defendants.          :
```

OPINION AND ORDER

Plaintiff Habeeba's Dance of the Arts, Ltd. brings this trademark action against Defendants Susan Knoblauch and YWCA Columbus. Plaintiff alleges that Defendants infringed its trademark to the name HABEEBA when Knoblauch conducted a dance symposium using the name "Habiba" in October 2005 at the YWCA in Columbus, Ohio. Plaintiff asserts the following claims: (1) violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125; (2) violation of the Ohio Deceptive Trade Practices Act, Ohio Revised Code §4165.02; (3) common law unfair competition; (4) common law trademark infringement; and (5) contributory infringement.

This matter is before the Court on the YWCA's October 28, 2005 motion to dismiss under Fed. R. Civ. P. 12(b)(6). The YWCA argues that the complaint fails to state a claim for direct trademark infringement against the YWCA because there are no allegations that the YWCA used the name "Habiba." The YWCA further argues that it cannot be held liable for contributory infringement because it merely rented space to Knoblauch.

For the reasons stated below, the motion to dismiss is granted as to the claims of direct trademark infringement and unfair competition, but denied as the contributory infringement claim.

**I. Factual Allegations**

Plaintiff alleges that it owns the trademark HABEEBA. Plaintiff provides dance performances and instructs others in dancing under the HABEEBA name.  Plaintiff has been providing dance performances under the HABEEBA name since at least 1960 and has been providing dance instruction under that name since at least 1972.  The complaint alleges that Plaintiff enjoys substantial goodwill and a valuable reputation as a result of the HABEEBA name and the efforts, skill, and experience of those who have worked for Plaintiff over the years.

According to the complaint, Defendant Knoblauch has been aware of Plaintiff since at least 2005, and has been aware of the HABEEBA name since 1990.  Knoblauch has conducted symposiums featuring dance instruction and dance performance at the YWCA.  In these symposiums, Knoblauch has used the services of individuals under contract with Plaintiff and has identified those individuals as being affiliated with Plaintiff.  After being acquainted with Plaintiff, Knoblauch used the name "Habiba" in connection with, and in advertising, a dance symposium she offered in October 2005 at the YWCA Columbus.  The complaint alleges that "Habiba" is phonetically the same as HABEEBA and that Knoblauch used "Habiba" without permission, authority, or license from Plaintiff.

Plaintiff alleges that the similarity of HABEEBA with "Habiba" is likely to cause confusion among consumers.  Plaintiff alleges

that the similarity is likely to deceive the public into believing that Knoblauch's dance symposium at the YWCA either originated with, was sponsored by, was offered with approval of, or was offered under the supervision and control of Plaintiff. Plaintiff contends that such use of a substantially similar mark to HABEEBA is a threat to its goodwill and reputation.

Plaintiff alleges that it notified Knoblauch more than once in writing to request that she cease using "Habiba," but Knoblauch continued to use the name. Additionally, Plaintiff gave the YWCA advance written notice that Knoblauch's symposium was using a name confusingly similar to Plaintiff's name. Plaintiff asked the YWCA to stop the use of "Habiba" in connection with the dance symposium to be held at the YWCA in October 2005. According to the complaint, the YWCA allowed the symposium to go on and did not interfere with the name or advertising of the event. Plaintiff alleges that Knoblauch and the YWCA have caused, and will continue to cause, serious and irreparable injury and damage to Plaintiff unless restrained by the court.

**II. Standard of Review**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1982). A complaint may be dismissed for failure to state a claim only when "it appears a beyond doubt that the plaintiff can prove no set of facts in support of his claim which

3

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or when the face of the complaint reveals that there is an insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).

Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 416 U.S. at 236; Roth Steel Prods., 705 F.2d at 155. A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). The court is not required to accept as true unwarranted legal conclusions or factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10 (6th Cir. 1987). Nor may the court consider extrinsic evidence in determining whether a complaint states a claim. Roth Steel Prods., 705 F.2d at 155; Sims v. Mercy Hosp. of Monroe, 451 F.2d 171, 173 (6th Cir. 1983).

**III. Analysis**

    **A.   Direct Trademark Infringement**

Under Section 43(a) of the Lanham Act, no person may "use[] in commerce any word, term, name, symbol, or device" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another

4

person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. §1125(a)(1)(A). The Ohio Deceptive Trade Practices Act similarly prohibits any person from "caus[ing] a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Ohio Rev. Code §4165.02(A)(2).

The YWCA argues that it cannot be held liable for trademark infringement because it is Knoblauch, and not the YWCA, whom the complaint alleges to have used "Habiba" and infringed Plaintiff's trademark. The YWCA contends that it could not have caused a likelihood of confusion when it is not alleged to have even used "Habiba" in connection with the dance symposium.

The YWCA is correct that Knoblauch is the primary focus of the complaint. Indeed, the complaint makes no direct allegations of trademark infringement against the YWCA. The only allegations in the complaint concerning the YWCA are that: Knoblauch held the October 2005 dance symposium at the YWCA in Columbus, Ohio; Plaintiff gave advance written notice to the YWCA requesting it to stop Knoblauch's symposium for the reason that "Habiba" is confusingly similar to HABEEBA; and the YWCA "continue[d] to permit" the dance symposium to take place. Compl., ¶25.

The Court finds that the complaint fails to state a claim for direct trademark infringement against the YWCA. Before a person can be held liable for direct trademark infringement, they must have <u>used</u> a mark confusingly similarly to another person's trademark. See 15 U.S.C. §1125(a)(1) (requiring a "use"); Ohio Rev. Code §4165.02(A)(1) (requiring a "causing" of a likelihood of

confusion). The complaint contains no allegations that the YWCA or any of its employees used "Habiba" in connection with the October 2005 dance symposium. The complaint only alleges that the YWCA permitted the symposium to take place after being requested by the Plaintiff to put a stop to it. It is Knoblauch whom the complaint alleges used "Habiba" in advertising and conducting the symposium.

Accordingly, Counts I, II, and IV for trademark infringement are dismissed as to the YWCA.

### B. Unfair Competition

Count III asserts a claim for unfair competition, alleging that Knoblauch's use of "Habiba" caused confusion as to the source or sponsorship of the dance symposium. The allegations in Count III are parallel to the allegations of trademark infringement and thus fail to state a claim against the YWCA, who is not alleged to have used the word "Habiba." See Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1122-23 (6th Cir. 1996) (noting that Lanham Act infringement claims are "one and the same" with unfair competition claims based on false designation because likelihood of confusion "is the essence" of both claims).

### C. Contributory Infringement

Count V of the complaint asserts a claim for contributory infringement against the YWCA. The complaint alleges that the YWCA is liable for contributory infringement because it refused to stop the symposium despite being told of Knoblauch's infringing conduct.

The YWCA argues that the contributory infringement claim should be dismissed because the YWCA did not exercise any control over Knoblauch. The YWCA claims that it merely rented space to Knoblauch and did not control the content of Knoblauch's

6

advertising or control the substance of Knoblauch's symposium.

The Supreme Court described the nature of a contributory infringement claim in Inwood Laboratories Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982):

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorally responsible for any harm done as a result of the deceit.

Id. at 853-54; see also Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983 (9th Cir. 1999) ("Contributory infringement occurs when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the service mark.").

When the alleged infringement does not involve a product, a court must look to "the extent of control exercised by the defendant over the third party's means of infringement." Lockheed Martin Corp., 194 F.3d at 984 (citing Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1148-49 (7th Cir. 1992)). "Direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark permits the expansion of [the] 'supplies a product' requirement for contributory infringement." Id.

The Court finds that the complaint sufficiently states a claim for contributory infringement against the YWCA. The complaint

7

alleges that the Plaintiff's written notice gave the YWCA advance knowledge of Knoblauch's plans to engage in infringing conduct at the YWCA. The complaint further supports the inference that the YWCA had enough control over Knoblauch to have prevented the infringing event from taking place. Finally, the complaint alleges that the YWCA did in fact allow the infringing event to take place at its facilities. This is sufficient to state a claim for contributory infringement. See Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996) (denying motion to dismiss contributory trademark infringement claim against operators of swap meet because the complaint alleged that the operators had knowledge of blatant infringement by the vendors); Hard Rock Café, 955 F.2d at 1149 (holding that contributory liability could be imposed if operator of a flea market was "willfully blind" to the ongoing violations by vendors); cf. Columbia Pictures Industries, Inc. v. Aveco, Inc., 800 F.2d 59 (3rd Cir. 1986) (holding in copyright case that providing the site and facilities for known infringing activity is sufficient to establish contributory liability).

Whether the YWCA is liable for contributory infringement depends on certain factual matters that cannot be resolved on a motion to dismiss. In Fonovisa and Hard Rock Café, the courts stated that liability hinges on how substantially involved the operators were in the businesses of the infringing vendors, including whether the operators participated in advertising and selling tickets, their degree of supervision, and whether they shared in ticket sale proceeds. The YWCA raises some of these factual issues in its motion to dismiss, alleging that it did nothing more than "rent" the space to Knoblauch, that it did not

8

assist in the distribution of Knoblauch's advertising and registration forms, and that the YWCA did not have the power to stop the infringing conduct from taking place. Though the YWCA may ultimately be correct, these matters are outside of the complaint and cannot be considered on a motion to dismiss. The complaint states a claim for contributory infringement and Plaintiff is entitled to discovery regarding these issues.

### D. The Viability Of The Underlying Trademark Claim

The YWCA goes on to attack the viability of the underlying trademark claim against Knoblauch. See Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc., 363 F.3d 1306, 1308 (Fed. Cir. 2004) ("[T]here can be no inducement or contributory infringement absent an underlying direct infringement."). In particular, the YWCA argues that HABEEBA is not a protectable mark.

#### 1. The Lanham Act

The Lanham Act offers protection to both registered and unregistered marks. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). The complaint does not allege that Plaintiff has registered HABEEBA, so the Court will assume at this point that the mark is not registered.

Whether a mark qualifies for trademark protection depends on its level of distinctiveness. See DeGidio v. West Group Corp., 355 F.3d 506, 510 (6th Cir. 2004). "Putative trademarks may either: (1) be inherently distinctive or (2) acquire distinctiveness through secondary meaning." Id. (citing Two Pesos, 505 U.S. at 769).

> Within the two basic categories are sub-categories that form the complete spectrum of distinctiveness of marks. Arrayed in an ascending order roughly reflecting their

9

> eligibility to trademark status and the degree of protection afforded, the categories are: (1) generic terms; (2) descriptive; (3) suggestive; (4) arbitrary or fanciful. Generic terms can never be trademarks, descriptive terms are not inherently distinctive and suggestive, arbitrary and fanciful terms are regarded as being inherently distinctive.

Id. (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §11:2 (4th ed. 2003)). Thus, a descriptive mark qualifies for protection only if it acquires secondary meaning connecting it to the owner of the mark. See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 122 (2004); Tumblebus, Inc. v. Cranmer, 399 F.3d 754, 761 (6th Cir. 2005).

### 2. The Doctrine Of Foreign Equivalents

In its motion to dismiss, the YWCA argues that HABEEBA should be categorized as a descriptive mark. The YWCA relies on the doctrine of "foreign equivalents." Under this doctrine, "a foreign word is ordinarily translated into English to determine whether it is suggestive or descriptive." Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 38 (1st Cir. 2006) (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1531-32 (4th Cir. 1984)). The YWCA contends that HABEEBA is merely descriptive, as the Arabic translation of HABEEBA means "sweetheart, darling, [or] beloved woman." The Hans Wehr Dictionary of Modern Written Arabic 152 (3d ed. 1976).

The Court is not convinced at this point that the doctrine of foreign equivalents applies. The doctrine is a "guideline," not an "absolute rule," Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1377 (Fed. Cir. 2005), and it "does not apply to every foreign word that appears in a trade- or service mark." Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., No. C 05-0587, 2005 WL 701599, at *5 (N.D. March 23, 2005).

Indeed, the doctrine applies "only when it is likely that the ordinary American purchaser would 'stop and translate [the foreign word] into its English equivalent.'"  Palm Bay, 396 F.3d at 1377 (quoting In re Pan Tex Hotel Corp., 190 U.S.P.Q. 109, 110 (T.T.A.B. 1976)).  At this early stage in the case, the Court has some doubts about whether the ordinary American purchaser would stop and translate HABEEBA into its English equivalent.  Discovery is needed to test the YWCA's argument on this issue.

Moreover, the YWCA's argument ignores the possibility that HABEEBA is the first name of the individual who formed Plaintiff Habeeba's Dance of the Arts, Ltd.  Attached to Plaintiff's complaint are print-outs from its website.  The text of these print-outs suggest that Plaintiff was formed by a dancer who performed under the name "Habeeba."  See Compl., Ex. 1, p. 2 ("Habeeba began performing in 1960, and began instructing in 1972 when she created Habeeba's Dance of the Arts, Inc.").  If, as a factual matter, Plaintiff's business name is based on the first name of the founder, then there exists the legal issue of whether the doctrine of foreign equivalents would even apply.  A well-established framework for analyzing the protectability of trademarks based on personal names is already in place.  See, e.g., 815 Tonawanda Street Corp. v. Fay's Drug Co., Inc., 842 F.2d 643, 648 (2d Cir. 1988) ("[P]ersonal names -- both surnames and first names -- are generally regarded as descriptive terms which require proof of secondary meaning."); Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 125 (4th Cir. 1990); Conan Props., Inc. v. Conans Pizza, Inc., 752 F.2d 145, 155 (5th Cir. 1985); In re Rath, 402 F.3d 1207, 1220-21 (Fed. Cir. 2005).

11

### 3. Secondary Meaning

Running on the assumption that HABEEBA is descriptive under the doctrine of foreign equivalents, the YWCA next argues that Plaintiff's trademark claim must be dismissed because the complaint fails to allege that HABEEBA has acquired secondary meaning. An unregistered mark acquires secondary meaning when the mark or name has come to "identify the product [or service] with its manufacturer or source." TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 28 (2001); see also Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1054 (6th Cir. 1999) ("Secondary meaning is defined as public association of a product or service with a single source.").

The Court finds that the complaint sufficiently alleges secondary meaning. Though the complaint does not use the phrase "secondary meaning," it does allege that consumers have come to associate HABEEBA with the dance services offered by Plaintiff. The complaint alleges that Plaintiff has provided dance performances under the HABEEBA name since at least 1960 and has been providing dance instruction under that name since at least 1972. See Compl., ¶12. The complaint further alleges that Plaintiff enjoys substantial goodwill and a valuable reputation as a result of its use of the HABEEBA name over the years. Id., ¶13. Finally, the complaint alleges that Plaintiff has taken steps to assure that HABEEBA is associated with Plaintiff's services. Id., ¶14. Thus, the Court finds that the complaint alleges that HABEEBA has acquired secondary meaning.

**IV. Conclusion**

For the reasons stated above, the YWCA's October 28, 2005 motion to dismiss (doc. 8) is GRANTED IN PART and DENIED IN PART. Counts I, II, III, and IV alleging trademark infringement and unfair competition are dismissed for failure to allege that the YWCA used any word or mark confusingly similar to Plaintiff's. The motion to dismiss is denied as to Count V for contributory infringement, and the YWCA's challenges to the underlying trademark claim against Defendant Knoblauch are rejected.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: May 1, 2006